

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-14-00104-CV

Richard **ABRAMS**,
Appellant

v.

Marguerite Salinas a/k/a Marguerite Y. Salinas f/k/a Marguerite **ABRAMS**
and Ashely Abrams a/k/a Ashley N. Abrams,
Appellees

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 1987-CI-16750
Honorable Janet P. Littlejohn, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Rebeca C. Martinez, Justice
    Patricia O. Alvarez, Justice
    Luz Elena D. Chapa, Justice

Delivered and Filed:  May 6, 2015

AFFIRMED

This appeal arises from an alleged breach of a provision in an agreed decree of divorce obligating the parties to share equally in the cost of their daughter's college expenses.  Appellant Richard Abrams argues the trial court erred in ruling that (1) the four-year statute of limitations did not apply and (2) he breached his contractual obligation to pay his portion of his daughter's college expenses.  Because the ten-year statute of limitations for judgments applies and the conditions precedent to the payment of college expenses were not specifically denied by Richard, we affirm the trial court's judgment.

**BACKGROUND**

Richard and Marguerite were divorced in 1988. They had one daughter, Ashley, born in 1984. Their divorce decree required Richard and Marguerite to each pay one-half of Ashley's reasonable college expenses:

> Further, the parties would show the Court that they agree to, and the Court so ORDERS and DECREES that each of the parties will be responsible for and will pay 50% of any and all reasonable education expenses incurred to send ASHLEY ABRAMS to college, provided the child is a full-time student (carrying 12 hours or more) and maintains at least a "C" or equivalent grade-point average toward the completion of a college bachelor's degree. This obligation will include tuition, activities fees, laboratory fees, books, room and board, and other charges normally related to such education. The provisions of this agreement may be enforced by the parties or the child. Further, as conditions for payment under this article: (a) the grades of the child will be reported to the parties within ten days after receipt of same, and parties will receive a photocopy of any report card issued by the school; (b) parties will have the right at any time to contact the school to obtain current information on the grades and status of the child; (c) the child will authorize the school to release that information to parties; (d) this agreement is only valid up until the time the child reaches 30 years of age, thereafter, the child will be responsible for her school expenses in obtaining her bach[e]lor's degree.

After the divorce, Richard stopped seeing Ashley when she was five or six. Ashley recalled seeing her father once more, when she was twelve-years old. On that occasion, Richard told Ashley that she was dead to him. When Ashley was about sixteen, Richard was held in contempt by the trial court for not providing his contact information to the Texas Attorney General for purposes of child-support payments. Richard provided his contact information, including his mailing address, to the Attorney General. The Attorney General's office refused to disclose it to Ashley's mother on the grounds it was protected under the Servicemembers Civil Relief Act.

In 2004, after being home-schooled and obtaining a General Equivalency Diploma (a GED), Ashley enrolled in the University of the Incarnate Word College as a full-time student. In 2006, Richard moved from the address he previously provided pursuant to the court order.

In August of 2008, Ashley graduated from Incarnate Word and began making plans to move to Washington, D.C. to pursue a master's degree. When gathering documents necessary to enroll in the master's program, Ashley first learned of the existence of the college provision in her parents' agreed divorce decree. Within ten days of learning about Richard's obligation to pay one-half of her college expenses, she sent him a certified letter to his last known address asking him to reimburse half of her college expenses. Ashley explained in her letter that had she known the contents of the divorce decree, she would have sent all the required information sooner. Ashley included with her letter a copy of the divorce decree, an itemization of all college expenses minus grants and scholarships she received, and proof she maintained a C average.

Richard acknowledged receiving Ashley's letter. He testified he responded to Ashley's request by stating she was not in compliance with the divorce decree. He testified that once he found out Ashley had graduated from Incarnate Word, he contacted the college to request information on her. He asserted the university refused to provide the information without a release from Ashley. Richard did not follow up with Ashley to request from her the information he sought from the university, and Ashley had no knowledge of Richard's request.

Ashley, who denied receiving Richard's response to her first letter, sent Richard a second certified letter with the same enclosures. Although she received proof of receipt, Richard did not respond to the second request. In December of 2008, she sent a third certified letter with the same enclosures. This time, the letter was not deliverable.

In January of 2013, Ashley and her mother filed a petition to enforce Richard's contractual obligations under the agreed judgment. Richard first filed a general denial, and later amended his answer only adding a statute of limitations defense. After a bench trial, Marguerite and Ashley were awarded one-half of the college expenses incurred by Ashley. Richard filed a motion for

new trial alleging, among other things, the award was subject to the statute of limitations. The motion was denied and this appeal followed.

## STATUTE OF LIMITATIONS

Because the parties disagree about which statute of limitations applies, we first address whether Marguerite's and Ashley's claims are subject to a four-year or a ten-year limitations statute.

### A.  Standard of Review

Whether a cause of action is barred by limitations is a question of law that appellate courts review de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003); *accord Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011).

### B.  Arguments of the Parties

#### 1.  Richard

Richard argues the four-year statute of limitations bars any claim for college expenses because the claims arise from a divorce decree. The four-year statute applies to a breach of an agreement contained in an agreed divorce decree. Richard's obligation was contractual, and it accrued when he allegedly failed to pay the college expenses. Because Richard's obligation, if any, to pay his share of the college expenses accrued when Ashley graduated in August of 2008, the lawsuit filed against him on January 18, 2013 was not timely. Therefore, Marguerite's and Ashley's claims for college expenses are barred by the four-year statute of limitations.

#### 2.  Marguerite and Ashley

Marguerite and Ashley contend Richard failed to conclusively establish the agreement in the final decree of divorce was contractual and subject to the four-year statute of limitations. The appellees argue the terms of the divorce decree at issue make it clear that the decree is a consent judgment and not a contract. Marguerite and Ashley further contend the enforcement of Richard's

obligation to pay college expenses is thus subject to the ten-year dormancy statute for judgments by virtue of being contained in the agreed divorce decree.

We review the applicable law.

## C.  Applicable Statute of Limitations

### 1.  *Divorce Decrees Interpreted by Contract Law*

Divorcing couples "may enter into a written agreement concerning . . . the liabilities of the spouses." TEX. FAM. CODE ANN. §§ 7.006(a) (West 2006).  Divorce agreements "are considered contracts and their legal force and meaning are governed by contract law."  *Soto v. Soto*, 936 S.W.2d 338, 341 (Tex. App.—El Paso 1996, no writ) (op. on reh'g) (citing *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986)); *accord Beshears v. Beshears*, 423 S.W.3d 493, 500 (Tex. App.—Dallas 2014, no pet.).  Generally, the four-year statute of limitations applies to any action for breach of a written divorce agreement.  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.004(a)(3) (West 2002) (debt), 16.051 (West 2014) (residual limitations period); *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002).

### 2.  *Divorce Agreement Incorporated into Judgment*

When, however, a court approves an agreement made by the divorcing parties, "the court may set forth the agreement in full or incorporate the agreement by reference in the final decree." TEX. FAM. CODE ANN. § 7.006(b).  "Once the agreement of the parties has been approved by the court *and made a part of its judgment*, the agreement is no longer merely a contract between private individuals but is the judgment of the court."  *Ex parte Gorena*, 595 S.W.2d 841, 844 (Tex. 1979) (orig. proceeding) (emphasis added); *accord Schwartz v. Schwartz*, 247 S.W.3d 804, 806 (Tex. App.—Dallas 2008, no pet.); *Pettitt v. Pettitt*, 704 S.W.2d 921, 923 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).  "When so . . . incorporated, the divorce decree becomes a consent judgment, subject to the same degree of finality and binding force as a judgment rendered in an

adversary proceeding." *Soto*, 936 S.W.2d at 341 (citing *McCray v. McCray*, 584 S.W.2d 279, 281 (Tex. 1979) (per curiam) ("Although rules relating to contract interpretation apply, an agreed judgment is accorded the same degree of finality and binding force as a final judgment rendered at the conclusion of an adversary proceeding.")).

### 3.    *Enforcing Decree as Judgment*

A divorce decree is a final judgment "distinguishable from other final judgments only by the remedies available for their enforcement." *O'Carolan v. Hopper*, 414 S.W.3d 288, 301 (Tex. App.—Austin 2013) (citing *Huff v. Huff*, 648 S.W.2d 286, 287 (Tex. 1983)). In the context of a divorce, for example, if one of the parties fails to perform in accordance with the divorce decree, the other party has the option of filing a motion to reduce any arrearage to an enforceable judgment or file a motion for contempt designed to assure satisfaction of payment ordered in the divorce decree. *O'Carolan*, 414 S.W.3d at 300–01.

### 4.    *Statute of Limitations*

A party seeking to enforce a divorce decree is subject to certain time limitations. When the terms of the agreed divorce have been incorporated into the judgment, "an action for enforcement of [the] judgment may be brought within ten years from the date of judgment." *Pettitt*, 704 S.W.2d at 923 (citing the statutory predecessor of the dormant judgment rule, TEX. CIV. PRAC. & REM. CODE ANN. § 34.001 (West 2015)); *accord O'Carolan*, 414 S.W.3d at 303; *see also Huff*, 648 S.W.2d at 289–90 (applying the ten-year statute to child support enforcement, but *Huff* later superseded in part by statute, Act of May 21, 2009, 81st Leg., R.S., ch. 767, § 31, 2009 Tex. Gen. Laws 1938, 1948, excluding "a judgment for child support under the Family Code").

However, where a judgment has incorporated an agreed divorce decree and the judgment orders payments predicated on future conditions, we agree with the reasoning of our sister courts in *O'Carolan* and *Marriage of Ward* as guided by *Huff*. *See O'Carolan*, 414 S.W.3d at 303–04

(citing *In re Marriage of Ward*, 806 S.W.2d 276, 277 (Tex. App.—Amarillo 1991, writ denied)) (analyzing *Huff* and *Marriage of Ward* and concluding *Huff*'s reasoning applied to a motion to enforce spousal maintenance).

We hold that for an action to enforce a payment ordered by the judgment but predicated on future conditions, the dormant judgment statute does not begin to run on the date the judgment becomes final; rather, it begins to run when the payment becomes due. *See O'Carolan*, 414 S.W.3d at 303–04; *Marriage of Ward*, 806 S.W.2d at 277 (citing *Gonzales v. Gonzales*, 728 S.W.2d 446, 448 (Tex. App.—San Antonio 1987, no writ)); *see also Shannon v. Fowler*, 693 S.W.2d 54, 56 (Tex. App.—Fort Worth 1985, writ dism'd) (applying same reasoning).

**D.     Analysis**

Having determined the applicable statute of limitations and the date on which it begins to run, we turn to Richard's argument.

Richard cites *Carlson v. Carlson*, 983 S.W.2d 304 (Tex. App.—Houston [1st Dist.] 1998, no writ) and *Stine v. Stewart*, 80 S.W.3d 586 (Tex. 2002) (per curiam) for the proposition that the four-year statute applies to agreements contained in divorce decrees. Both cases are distinguishable.

*1.*     Carlson v. Carlson

In *Carlson*, 983 S.W.2d at 305, the appellant sought reimbursement from her ex-husband for one-half of the college expenses incurred by the couple's two children. At issue on appeal was the reimbursement of expenses incurred by one child who attended school from July 1988 through May 1993. *Id*. at 307. The appellant filed suit in July 1994, and the trial court found that appellant's right to seek reimbursement for one-half of that child's educational expenses incurred between July 1988 and June 30, 1990, was barred by the limitations for contracts. *Id*. The trial

court then awarded the appellant one-half of the educational expenses incurred after July 1, 1990. *Id*.

On appeal, the appellant acknowledged she was seeking to enforce contractual rights. *Id.*; *see also Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996) (holding parties may, by language incorporated into the judgment, choose to enforce a judgment as a contract). Accordingly, the trial court applied the four-year period of limitations for contracts. Importantly, *Carlson* addressed the enforcement of an agreement to pay for educational expenses and not the enforcement of a judgment. *Carlson*, 983 S.W.2d at 307.

> 2. Stine v. Stewart

Similarly, *Stine* dealt with a third-party beneficiary affected by an agreement incident to divorce that disposed of the marital property and not with a former spouse or child seeking to enforce a provision of a final decree of divorce. *Stine*, 80 S.W.3d at 588–89. The agreement provided that if the couple's home was sold, any monies owing under a note payable to his wife's mother, Stine, would be apportioned between the parties. *Id*. at 588. The home was sold, and Stine was not paid. *Id*. Within two years after the house sold, Stine sued. *Id*. at 588–89. The issue before the Texas Supreme Court was whether the two-year limitations period under Texas Family Code section 9.003(b) or the four-year contract limitations period under Texas Civil Practice and Remedies Code section 16.051 applied. *Id*. at 589–90.

The court recognized that payment of the note was tied to the sale of the marital property. *Id.* at 590. However, the nature of Stine's claim was for breach of payment and not for the division of marital property. *Id*. at 592. The court held that the four-year limitations period applied to an agreement incident to a divorce decree rather than the two-year statute of limitations relating to the division of property. *Id.* (applying four-year statute to suit brought by third-party beneficiary to agreement incident to divorce that disposed of marital property).

Because we are dealing with an agreement to pay college expenses that is part of a decree of divorce, we conclude *Stine* is inapplicable to the issue at hand.

### 3. Present Case

The agreement at issue in this case is an agreed divorce decree to pay college expenses of the divorcing parties' child. As we have previously determined, the laws for enforcing judgments apply. *O'Carolan*, 414 S.W.3d at 302–03. Additionally, we need not decide whether college expenses fall under the child-support category, thus triggering Family Code section 157.005, because the filing of the petition to enforce filed by Marguerite and Ashley was timely even under *Huff*. *See Huff*, 648 S.W.2d at 289; *see also* TEX. FAM. CODE ANN. § 157.005 (West 2014) ("Time Limitations; Enforcement of Child Support").

The divorce decree at issue does not specify when Richard was required to make payments for Ashley's college expenses. It is silent as to whether payments were to be on a per semester basis, an annual basis, or as a lump sum payment. The only reference to a time line is the mandate that Ashley complete the college education paid by her parents before she reaches thirty years of age. Ashley's thirtieth birthday was on April 20, 2014. Ashley went to college from the fall of 2004 to August of 2008. We note the motion to enforce the agreement was filed on January 18, 2013,

- less than ten years from the date she first attended college, and
- before Ashley's thirtieth birthday.

Even if we assume Richard was obligated to make payments at the end of each semester—the earliest reasonable payment date given Ashley's requirement to be a full-time student and maintain a C average—limitations would begin to run for the first payment at the end of the fall semester of 2004. Because the motion to enforce was filed on January 18, 2013, and the earliest

date triggering the limitations was in December 2004, the claims are not barred by the ten-year dormancy statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 34.001.

Furthermore, given the divorce decree did not contain a due date for the payment of Ashley's college expenses, and given that the divorce decree required Richard to pay for one-half of the college expenses until April 20, 2014, Ashley's thirtieth birthday, the ten-year dormancy statute would not bar Ashley's claim. In fact, the trial record indicates the following finding by the trial court: "The Court further finds that the statute of limitations as it relates to Ms. Abrams is not applicable because pursuant to page six, sub paragraph D, the agreement is valid until the child reaches the age of 30. As she has not reached the age of 30, so she is awarded a judgment . . . ."

Without deciding the accrual date under the divorce decree in question, we conclude that under either scenario the ten-year limitations period did not bar the suit against Richard to enforce his obligation to pay one-half of Ashley's college expenses. Accordingly, we agree with the trial court's conclusion that the ten-year statute of limitations does not bar the claims made by Marguerite and Ashley against Richard for the enforcement of his obligation to pay one-half of Ashley's college expenses.

We conclude the ten-year dormancy period applies to Richard's obligation under the divorce decree to pay one-half of Ashley's college expenses. We further conclude the appellees' motion to enforce was timely filed and the ten-year dormancy statute did not bar their claim against Richard for one-half of Ashley's college expenses.

Next, we address the issue of conditions precedent to Richard's obligation to pay one-half of Ashley's college expenses.

### CONDITIONS PRECEDENT

"Conditions precedent are acts or events that occur subsequent to the formation of a contract and that must occur before there is a right to immediate performance and before there can

be a breach of contractual duty." *McMahan v. Greenwood*, 108 S.W.3d 467, 484 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citing *Marsh v. Marsh*, 949 S.W.2d 734, 743–44 (Tex. App.—Houston [14th Dist.] 1997, no writ)). A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied. *See Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 (Tex. 1998).

Richard contends Marguerite and Ashley failed to satisfy the following three conditions precedent contained within the divorce decree:

    (a)    the grades of the child will be reported to the parties within ten days after receipt of same, and parties will receive a photocopy of any report card issued by the school;

    (b)    parties will have the right at any time to contact the school to obtain current information on the grades and status of the child; [and]

    (c)    the child will authorize the school to release that information to parties.

## A.    Standard of Review

When a party challenges the legal sufficiency of the evidence to support an adverse finding on which the party did not have the burden of proof at trial, the party must demonstrate there is no evidence to support the adverse finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Thornton v. Dobbs*, 355 S.W.3d 312, 316 (Tex. App.—Dallas 2011, no pet.). "If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails." *Thornton*, 355 S.W.3d at 316. A legal sufficiency challenge may be sustained only if

    (a)    [there is] a complete absence of evidence of a vital fact;

    (b)    the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact;

    (c)    the evidence offered to prove a vital fact is no more than a mere scintilla; [or]

    (d)    the evidence establishes conclusively the opposite of the vital fact.

*City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (quoting Robert W. Calvert, *"No Evidence" & "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)); *Heinert v. Wichita Falls Hous. Auth.*, 441 S.W.3d 810, 820 (Tex. App.—Amarillo 2014, no pet.).

When reviewing the factual sufficiency of the evidence, "'we consider and weigh *all* of the evidence and will set aside the verdict only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.'" *City of Keller*, 168 S.W.3d at 826; *accord Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

## B.    Arguments of the Parties

Richard contends the undisputed evidence established the above conditions precedent were not satisfied.  Accordingly, Richard argues he is excused from any obligation to pay one-half of Ashley's college expenses.

Marguerite and Ashley contend Richard waived the right to enforce the conditions precedent to his obligation to pay his share of Ashley's college expenses.  Specifically, the appellees argue Richard's prolonged absence and unresponsiveness to Ashley are evidence Richard affirmatively and consciously relinquished his right to complain about Ashley's failure to fulfill the conditions precedent in the divorce decree.

## C.    Waiver

Consent and agreed judgments look for their *interpretation* to the law of contracts.  *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex. 2000); *see also Hydroscience Techs., Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 798 (Tex. App.—Dallas 2013, pet. denied) ("An agreed judgment must be interpreted as if it were a contract *between the parties*, and the interpretation of the judgment is governed by the laws relating to contracts." (emphasis added)); *Chapman v. Abbot*, 251 S.W.3d 612, 616 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (agreed judgments subject to "'the usual rules of contract interpretation'" (quoting *Broesche v. Jacobson*,

218 S.W.3d 267, 271 (Tex. App.—Houston [14th Dist.] 2007, pet. denied))). The interpretation of an unambiguous consent judgment, like the interpretation of an unambiguous contract, is a matter of law for the court. *See Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *Chapman*, 251 S.W.3d at 616; *see also Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex. 1983).

In a contract with a condition precedent, performance of that condition precedent is an essential element of a plaintiff's breach of contract case. *Lidawi v. Progressive Cnty. Mut. Ins. Co.*, 112 S.W.3d 725, 734 (Tex. App.—Houston [14th Dist.] 2003, no pet.). "'A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation.'" *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) (quoting *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992)) (citing RESTATEMENT (SECOND) OF CONTRACTS § 224 (1981) ("A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.")).

"When a promise is subject to a condition precedent, there is no liability or obligation on the promissor and there can be no breach of the contract by him until and unless such condition or contingency is performed or occurs." *Roberts v. Clark*, 188 S.W.3d 204, 212 (Tex. App.—Tyler 2002, pet. denied) (citing *Toland v. Kaliff*, 435 S.W.2d 260, 262 (Tex. Civ. App.—San Antonio 1968, no writ)). The burden of both pleading and proof of performance of a condition precedent to recovery is governed by Rule 54 of the Texas Rules of Civil Procedure:

> In pleading the performance or occurrence of conditions precedent, it shall be sufficient to aver generally that all conditions precedent have been performed or have occurred. When such performances or occurrences have been so plead, the party so pleading same shall be required to prove only such of them as are specifically denied by the opposite party.

TEX. R. CIV. P. 54; *see also Lidawi*, 112 S.W.3d at 729 n.1 (citing *Trevino v. Allstate Ins. Co.*, 651 S.W.2d 8, 11 (Tex. App.—Dallas 1983, writ ref'd n.r.e.)) (burden of both pleading and proof of performance of all conditions precedent to recovery is with the plaintiff).

When a defendant fails to specifically deny any performance or occurrence of conditions precedent, "[R]ule 54 does not cumber [a plaintiff] with proving[] the performance or occurrence of any condition precedent to its recovery.'" *MacDonald v. Bank of Kerrville*, 849 S.W.2d 371, 372 (Tex. App.—San Antonio 1993, writ dism'd) (quoting *Hill v. Thompson & Knight*, 756 S.W.2d 824, 826 (Tex. App.—Dallas 1988, no writ)); *see also Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 147 (Tex. App.—Dallas 2012, no pet.); *Rockwall Commons Assocs., Ltd. v. MRC Mortg. Grantor Trust I*, 331 S.W.3d 500, 508 (Tex. App.—El Paso 2010, no pet.) ("Where a defendant does not specifically deny a plaintiff's performance-of-conditions-precedent pleading, a plaintiff is not encumbered with proof of such performance.").

## D.    Analysis

In this case, Marguerite and Ashley plead that all conditions precedent were met. Specifically, they alleged the following:

> Petitioners assert that all such enumerated conditions were met, in fact, all conditions precedent to this suit were and have been met, and there is no[] valid reason for RICHARD to have failed and refused to have performed under the provision quoted from the parties' Final Decree of Divorce . . . . Petitioners assert that RICHARD has breached his contractual agreements regarding the payment of ASHLEY's tuition.

Richard's answer did not specifically deny any of the conditions precedent in the divorce decree. In his Original Answer, Richard pled a general denial; in his First Amended Answer, he asserted a general denial and a statute of limitations defense. The record does not contain any pleadings whereby Richard specifically denied that "all conditions precedent to this suit were and have been met." Absent a specific denial of each condition precedent, Richard is not entitled to complain

about the alleged non-performance of the conditions precedent. *See Sharifi*, 370 S.W.3d at 147; *Rockwall Commons*, 331 S.W.3d at 508; *MacDonald*, 849 S.W.2d at 372. Richard is, therefore, obligated to pay one-half of Ashley's college expenses irrespective of those conditions.

Because Marguerite and Ashley asserted in their pleading that all conditions precedent were satisfied, Richard was required to specifically deny each condition precedent. Richard failed to do so. Therefore, Richard waived his complaint about Ashley allegedly failing to satisfy the conditions precedent.[1] *See Sharifi*, 370 S.W.3d at 147; *Rockwall Commons*, 331 S.W.3d at 508; *MacDonald*, 849 S.W.2d at 372. We overrule Richard's second issue.

### CONCLUSION

Marguerite's and Ashley's Petition to Enforce for Breach of the Agreed Divorce Judgment in this case was subject to the laws for enforcing judgments, and because the statute of limitations does not begin to run until the payment is due, it was filed within the ten-year period for the dormant judgment statute. Because Richard failed to specifically deny the appellees' allegation that all conditions precedent were satisfied, he waived his right to complain about the proof of those conditions. We affirm the trial court's judgment.

Patricia O. Alvarez, Justice

---

[1] Because Richard waived his right to complain about whether Ashley proved she met the conditions precedent, we need not address whether Richard waived Ashley's performance of any of those conditions. *See* TEX. R. APP. P. 47.1