**Affirmed and Memorandum Opinion filed November 8, 2022.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-21-00591-CV

## NANCY PETRUCCIANI, Appellant

## V.

## RUSSELL A. PETRUCCIANI, Appellee

**On Appeal from the 309th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2007-51593**

## M E M O R A N D U M   O P I N I O N

In this appeal from a post-divorce enforcement order for turnover and appointment of a receiver, appellant Nancy Petrucciani argues that the debt created by her 2008 divorce decree is unenforceable because it became dormant after ten years and was not timely revived. Because the divorce decree conditioned Nancy's payment obligation on subsequent events, the earliest of which occurred in 2014, we conclude that the payment obligation had not become dormant by the time her former spouse sought to enforce it in 2021. We therefore affirm the trial court's order.

# I.

After having two children together, Nancy and Russell Petrucciani divorced in 2008.[1] In the divorce decree, the trial court awarded Russell $30,000, with simple interest of 6% to accrue beginning twelve months after the judgment. The debt was secured by a lien on the home where Nancy resided with the couple's minor children. The divorce decree stated that "accrued interest and unpaid principle [are] to be paid upon the first to occur of any of the following events": (a) Nancy's sale of the home, (b) the emancipation of the couple's youngest child, (c) Nancy's remarriage, (d) Nancy's cohabitation with a romantic partner, (e) Nancy's death, or (f) the home ceasing to be the children's primary residence.

In 2021, Russell filed an "Application for Turnover After Judgment and Appointment of Receiver." At the hearing on the Application, Russell's counsel stated that the earliest date that one of the listed events occurred was in May 2014, when the youngest child reached the age of 18 and graduated from high school. In response, Nancy argued only that it was too late for Russell to seek execution on the judgment because it had become dormant and was not timely revived.[2] The trial court rejected Nancy's argument and signed a turnover order that included the appointment of a receiver to possess and liquidate Nancy's non-exempt property as necessary to satisfy the judgment against her. She appeals the trial court's order,

---

[1] The decree sates that the divorce was judicially pronounced and rendered in court on July 16, 2008, and was noted on the court's docket sheet on the same date, but was signed on October 21, 2008.

[2] Neither the Application nor a response to it is in the record, but Nancy asserts that she pleaded dormancy, which is an affirmative defense. *See* TEX. R. CIV. P. 94; *Taylor v. Speck*, 308 S.W.3d 81, 87 (Tex. App.—Dallas 2010, no pet.). Because it makes no difference to the outcome of the appeal, and because dormancy was the topic discussed at the oral hearing on Russell's Application, we assume, without deciding, that Nancy did plead dormancy.

which we review for abuse of discretion. *See Jay & VMK, Corp. v. Lopez*, 572 S.W.3d 698, 703 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

## II.

In a single issue, Nancy argues that the $30,000 judgment included in the 2008 divorce decree became dormant after ten years, after which Russell had just two years in which to revive the judgment. *See* TEX. CIV. PRAC. & REM. CODE § 34.001(a) ("If a writ of execution is not issued within 10 years after the rendition of a judgment of a court of record or a justice court, the judgment is dormant and execution may not be issued on the judgment unless it is revived."); *id.* § 31.006 ("A dormant judgment may be revived by scire facias or by an action of debt brought not later than the second anniversary of the date that the judgment becomes dormant.").

But as Russell correctly pointed out, both in the trial court and on appeal, the dormancy statute does not begin to run on the date of the judgment if the judgment predicates payment on future events. *See Abrams v. Salinas*, 467 S.W.3d 606, 611 (Tex. App.—San Antonio 2015, no pet.). In that event, the ten-year dormancy deadline "begins to run when the payment becomes due." *Id.* (because divorce decree ordered father to pay child's college expenses, motion to enforce filed more than ten years from divorce decree, but less than ten years from the dates child attended college, was not barred by dormancy statute); *see also In re Marriage of Ward*, 806 S.W.2d 276, 277 (Tex. App.—Amarillo 1991, writ denied) (where divorce judgment ordered husband to pay wife a portion of his monthly retirement benefits on receipt, dormancy statute applied only as to installments that had been "due and payable for more than ten years").

Here, the judgment stated that, as to Nancy's $30,000 debt to Russell, the "accrued interest and unpaid principle [are] to be paid upon the first to occur of" one of six events. By this language, the trial court made the occurrence of one of the six

listed events a condition precedent to Nancy's obligation to pay, and Russell's right to enforce the obligation did not accrue until that time. *See Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) ("A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation."). Because Nancy's obligation to pay was not enforceable until the earliest occurrence of one of the six possible conditions precedent, Russell could not properly have obtained a writ of execution until then. *See Rollins v. Am. Exp. Travel Related Servs. Co.*, 219 S.W.3d 1, 3 n.1 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("A 'writ of execution' is sought by a judgment creditor to enforce judgments."). It is undisputed that the first such event occurred in May of 2014; thus, Russell's right to enforce Nancy's obligation to pay did not accrue until May 2014, so that this part of the judgment would not have become dormant until May of 2024.

Nancy argues that *Abrams* can be distinguished in that a divorce agreement was incorporated into the judgment in that case, and the parties to the agreement were free to determine what conditions precedent must be met to trigger a payment obligation. Although the divorce decree in this case does not indicate that it incorporates an agreement between the parties, that is a distinction without a difference. Conditions precedent to payment were included in the divorce decree in this case just as they were in *Abrams* and their effect is the same regardless of whether the decision to include those conditions originated with the trial court or in an agreement between the parties. *See Ex parte Gorena*, 595 S.W.2d 841, 844 (Tex. 1979) (orig. proceeding) ("The fact that a judgment is rendered by consent gives it neither less nor greater force or effect than it would have had it been rendered after protracted litigation, except to the extent that the consent excuses error and operates to end all controversy between the parties." (quoting *Wagner v. Warnasch*, 156 Tex. 334, 339, 295 S.W.2d 890, 893 (1956))).

We overrule the sole issue presented.

### III.

Because Russell applied for turnover and appointment of a receiver to enforce Nancy's payment obligation in 2021—approximately seven years after Nancy's payment obligation matured and Russell's right to enforce it accrued—the part of the divorce decree creating and conditioning Nancy's payment obligation never became dormant. We accordingly affirm the challenged order.

/s/    Tracy Christopher
       Chief Justice

Panel consists of Chief Justice Christopher and Justices Wise and Hassan.